UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>and<br><br>ELISABETH DEVOS, *in her official capacity as Secretary of Education*,<br><br>Defendants. | **COMPLAINT**<br>**CIVIL ACTION NO:** _____ |

## INTRODUCTION

1. The Commonwealth of Massachusetts (the "Commonwealth"), by and through Attorney General Maura Healey (the "AGO"), brings this action against the United States Department of Education (the "Department") and Secretary of Education Elisabeth DeVos, in her official capacity as the Secretary of the Department.

2. This lawsuit challenges the Department's failure to adequately consider an application submitted by the AGO, seeking the cancellation of federal student loan debt incurred by Massachusetts students who attended Corinthian Colleges, Inc. ("Corinthian"), a notoriously deceptive business which operated two for-profit college campuses in Massachusetts under the "Everest Institute" brand: Everest Institute, Brighton and Everest Institute, Chelsea (together, "Everest MA").

3. The AGO investigated and prosecuted Corinthian for serious and substantial consumer fraud. In fact, the Department has itself found that Corinthian, whose Massachusetts campuses are now closed as a result of Corinthian's bankruptcy and dissolution, engaged in egregious job placement rate misrepresentations to prospective students in Massachusetts.

1

4. Nearly four years ago, on November 30, 2015, the AGO submitted a claim to the Department that students who enrolled at Corinthian's Massachusetts campuses between 2007 through 2014 were entitled to a defense to the repayment of the federal student loans they incurred (the "Defense to Repayment Application" or "DTR Application"). This claim for federal loan forgiveness, proffered to the Department by the AGO on behalf of former Corinthian students in Massachusetts, described the school's widespread illegal conduct and included over 2,700 pages of supporting documentation. The DTR Application specifically identified 7,241 students entitled to a loan discharge.

5. This Court already has ruled that the AGO's DTR Application validly asserted a borrower defense on behalf of these 7,241 former students and that the Department has an obligation to act on the application. Nonetheless, the Department has failed to explicitly grant or reject the relief requested in the DTR Application. Instead, the Department has continued to collect on the loans of former Massachusetts Corinthian students, including by seizing the tax refunds and garnishing the wages of individuals specifically named by the AGO as qualifying for loan cancellation.

6. By continuing to initiate involuntary collection against former Massachusetts Corinthian students, the Department has in fact finally decided that the AGO's DTR Application is insufficient to establish a borrower defense for any and all 7,241 individuals. It has done so without providing any explanation for its decision and in the face of evidence that incontrovertibly entitles Massachusetts borrowers to relief.

7. The Commonwealth seeks an order setting aside this decision as arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

**PARTIES**

8. The Commonwealth of Massachusetts, represented by Attorney General Maura Healey, is a sovereign state of the United States of America.

9. Through its DTR Application, the AGO submitted borrower defense to repayment claims to the Department covering more than 7,200 Massachusetts borrowers.

10. Defendant United States Department of Education is an executive agency of the United States government. The Department's principal address is 400 Maryland Avenue, SW, Washington, DC 20202.

11. Defendant Elisabeth DeVos is the Secretary of the United States Department of Education. Her official address is 400 Maryland Avenue, SW, Washington, DC 20202.

**JURISDICTION AND VENUE**

12. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701-706, and the Higher Education Act and its amendments, 20 U.S.C. § 1001, *et seq*. In addition, the Court has jurisdiction to compel an officer or employee of the Department, including the Secretary, to perform his or her duty under 28 U.S.C. § 1361.

13. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims occurred here, 28 U.S.C. § 1391(e)(1)(B), and the Commonwealth is a resident of this judicial district, 28 U.S.C. § 1391(e)(1)(C).

14. This Court is authorized to award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the APA, 5 U.S.C. § 706, the Mandamus Act, 28 U.S.C. § 1361, and the Higher Education Act, 20 U.S.C. § 1082.

## STATUTORY AND REGULATORY FRAMEWORK

*Federal Loans and Borrower Defense to Repayment*

15. The Department oversees and is responsible for the federal student loan programs under Title IV of the Higher Education Act ("HEA"), 20 U.S.C. § 1071, *et seq.* The federal student loan programs are central components of the financial aid provided to students under Title IV. These programs are designed to provide critical assistance to students and expand access to higher education for students who could not otherwise afford to pursue a degree or certificate.

16. Federal student loan debts are not dischargeable in bankruptcy except where repaying the loan would cause undue hardship. *See* 11 U.S.C. § 523(a)(8).

17. The Department possesses extensive authority to collect defaulted student loans, including the power to seize federal tax refunds and certain government benefits and administratively garnish wages through the Debt Collection Improvement Act, 31 U.S.C. § 3701, *et seq. See* 31 U.S.C. §§ 3711, 3716, 3720A, & 3720D.

18. Pursuant to § 455(h) of the HEA, the Department issued the Borrower Defense Regulation in 1995. The Borrower Defense Regulation provides that a federal Direct Loan borrower may assert "as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school *under applicable State law*." 34 C.F.R. § 685.206(c)(1) (emphasis added). If the borrower's defense against repayment is successful, the Department must notify "the borrower that the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay." 34 C.F.R. § 685.206(c)(2).

19. Following implementation of the Borrower Defense Regulation, all Direct Loans have been issued pursuant to a Master Promissory Note that provides borrowers with notice that

borrowers "may assert, as a defense against collection of [a borrower's] loan, that the school did something wrong or failed to do something that it should have done," as long as "the school's act or omission directly relates to [the borrower's] loan or to the educational services that the loan was intended to pay, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law."

*Massachusetts Consumer Protection Act*

20. State law provides the basis for borrower defense for all federal student loans at issue in this lawsuit. 34 C.F.R. § 685.206(c) (eff. until Oct. 16, 2018); 34 C.F.R. § 682.209(g).

21. The Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

22. Pursuant to the AGO's express authority to promulgate rules and regulations interpreting the Massachusetts Consumer Protection Act, the AGO has promulgated regulations addressing the conduct of for-profit and occupational schools. As of 2014, these regulations have included the following language:

> In recent years, there has been a proliferation of for-profit and occupational post-secondary educational institutions that intensively market degree and non-degree programs to students. Many of these schools accept state and federal funds in the form of student grants and loans to finance student enrollment. Certain widespread acts and practices in the for-profit and occupational school industry continue to unfairly harm consumers, frequently leaving students with few career opportunities and significant student debt. The Attorney General, therefore, has updated and amended the 1978 regulations by replacing 940 C.M.R. 3.10 with 940 C.M.R. 31.00, to address problems experiences by consumers when they seek or are enrolled in for-profit schools or occupational programs.

940 C.M.R. 31.01.

23. The AGO is expressly authorized to bring enforcement actions under the Massachusetts Consumer Protection Act in Massachusetts Superior Court. M.G.L. c. 93A, § 4.

**FACTUAL ALLEGATIONS**

**A.     The AGO Provided Evidence of Misconduct at Corinthian and Requested Automatic Loan Discharges**

24.     In 2011, the AGO began investigating Corinthian for violating the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2. As part of that investigation, the AGO obtained and reviewed records from Corinthian, its accreditor, its successor, lenders, and other parties; reviewed over 650 surveys from former students; and interviewed more than 100 former Corinthian employees and students. The AGO also independently conducted nearly 1,000 employment verifications.

25.     On April 3, 2014, Massachusetts filed suit in Massachusetts Superior Court against Corinthian for violations of the Massachusetts Consumer Protection Act. These violations included making false or misleading representations regarding: (1) the urgency of enrollment; (2) the nature, character, and scope of Corinthian training programs and the quality of instruction; (3) the transferability of credits earned at Corinthian's Massachusetts campuses; (4) the availability of externships and training opportunities; (5) the likelihood of obtaining employment in a related field; (6) the availability of job placement services; and (7) the wages and salaries students could expect following graduation.

26.     On June 6, 2016, the Massachusetts Superior Court found Corinthian liable for violating the Massachusetts Consumer Protection Act after ruling upon the Commonwealth's motion for summary judgment.

27.     On August 1, 2016, the Court ordered Corinthian to pay restitution of $67,333,019, representing refunds of all costs paid by all graduates of Everest MA's Dental Assistant, Medical Assistant, Medical Administrative Assistant, Medical Insurance Billing and Coding, and Massage Therapy programs who enrolled between July 1, 2007 and June 30, 2014.

These programs comprise all programs offered by Corinthian at Everest MA during this time period.

28. Corinthian, insolvent and in bankruptcy, did not pay the judgment that Massachusetts secured.

29. While litigation was pending, the AGO brought the issue of Corinthian's illegal acts—which establish defenses to loan repayment under the Borrower Defense Regulation—to the attention of the Department. On November 30, 2015, the AGO submitted its DTR Application to the Department, together with more than 2,700 pages of investigatory findings, supporting evidence, and attestations from former Corinthian students.

30. A key component of the evidence in the DTR Application involved audits of the in-field job placement rates that Corinthian published for its Massachusetts campuses. The AGO audited these claimed placement rates for certain cohorts by verifying the underlying individual job placements with the alleged employers, and in certain cases, the students. Through this process, the AGO determined that Corinthian had inflated its in-field job placement rates by falsifying jobs, counting jobs regardless of field, and counting temporary positions or unsustainable employment.

31. Compounding this deception, student reports indicate that Corinthian's sales representatives routinely cited in-field job placement rates that exceeded the falsified written rates.

32. The DTR Application also provided significant evidence regarding high-pressure sales tactics. The evidence submitted with the DTR Application shows that Corinthian often rushed and pressured students into uninformed and ill-advised enrollment decisions.

33. Additionally, the DTR Application included evidence that students did not receive the education Corinthian promised. Corinthian's sales representatives promised students a high-quality, hands-on educational experience with professional instructors and small classes; placement in relevant externships; and assistance with job placement, resume writing, and interviewing. But once students had signed enrollment contracts and promissory notes, Corinthian failed to provide the promised education or career services upon which the students were relying. Many students reported a dangerous, inadequate, and inappropriate learning environment. There were consistent student reports of cheating, on-campus violence, and drug use, as well as apathetic teachers and unresponsive administrators.

34. In total, the DTR Application requested discharges of all federal student loans—including Parent PLUS loans—taken out to finance students' education at Everest, for all Everest MA students who enrolled between 2007 and 2014. The AGO sought this relief because of the following violations of state law, all carefully documented by student affidavits, survey responses, and other evidence:

    a.    Corinthian misled and deceived students about in-field job placement rates;

    b.    Corinthian misrepresented the availability of career services;

    c.    Corinthian engaged in high pressure sales tactics;

    d.    Corinthian misrepresented the quality and type of education and instruction;

    e.    Corinthian misrepresented the qualifications of instructors;

    f.    Corinthian misrepresented the learning environment and failed to provide a safe learning environment;

    g.    Corinthian misrepresented the salaries of graduates;

    h.    Corinthian misrepresented the transferability of credits;

    i.    Corinthian misrepresented student externships; and

    j.  Corinthian misled students about their ability to benefit from its programs.

35. Among the attachments to the AGO's DTR was Exhibit 4, which contained information about 7,241 Everest MA students, including each student's name, dates of enrollment, contact information, and programs attended. The AGO requested full, automatic loan discharges for each of these individuals.

36. The DTR Application included the following discussion of the importance of an automatic discharge:

> Given the enclosed evidence of widespread abuse, it is important that the Department of Education automatically discharge the loans of Corinthian's Massachusetts borrowers, and not require borrowers to submit individual applications. It is well beyond the resources of borrowers to investigate cohort placement rates or aggregate witness statements. Navigating defense to repayment applications and gathering associated required documentation can also present significant hurdles, particularly in the case of a closed school like Corinthian.

37. On January 8, 2016, the Department responded to the AGO in a two-page letter, acknowledging receipt and careful review of the DTR Application and its attachments. The Department anticipated "providing a fair, transparent, and efficient process for debt relief for all students" and "working with [the AGO] for the benefit of Massachusetts students."

**B. The Department Failed to Adequately Consider the DTR Application to the Detriment of Massachusetts Residents**

38. The Department has not treated the DTR Application as a valid borrower defense to repayment claim and has not granted the requested discharges.

39. Instead, the Department has continued its efforts to collect the debts of students included in the DTR Application.

40. The DTR Application included survey responses, affidavits, and statements from many specific students. The Department has specific information about Corinthian's conduct with respect to those individuals.

41. The DTR Application also specifically identified other students, who did not provide survey responses, affidavits, or statements. The AGO explained that these students were also subjected to Corinthian's unlawful practices and were entitled to loan discharges.

42. In previous litigation before this Court, the Department clearly indicated that it does not consider the DTR Application to constitute a borrower defense to repayment claim, stating that the Department "was not required to consider the [DTR Application] from the Massachusetts Attorney General to be a 'borrower defense claim' by the [plaintiffs in that matter]." Defendants' Reply Brief at 12, *Williams v. DeVos*, No. 16-11949, ECF No. 26 (D. Mass. March 31, 2017).

43. Ruling on cross motions for summary judgment in *Williams v. DeVos*, on October 24, 2018, this Court found "that Attorney General Healey's DTR submission was sufficient to require the Secretary to determine the validity of the plaintiffs' borrower defense. It rejects the Secretary's assertion that Attorney General Healey needed a signed statement (or its equivalent) from each individual borrower before the DTR Application could invoke borrower defense proceedings on each identified student's behalf." *Williams v. DeVos*, No. 16-11949, ECF No. 99 (D. Mass. Oct. 24, 2017) ("Williams Order").

44. The Court vacated the certification of the *Williams* plaintiffs' debts for collection through offset, declared that the DTR Application required the Secretary to render a decision on the merits of Plaintiffs' borrower defenses, remanded the matter to the Secretary for a redetermination of her certification decision, and retained jurisdiction in the event of an appeal from or challenge to the resulting administrative decision. *Id.*

45. Counsel for the Department informed the AGO that the Department did not interpret the Williams Order "as requiring the Department of Education to take any action with respect to any individuals other than the two named Plaintiffs" in that lawsuit.

46. Instead, the Department continued involuntary collections against borrowers listed in Exhibit 4 to the DTR Application without explicitly ruling upon the DTR Application, even after the Williams Order.

47. In so doing, the Department constructively denied the AGO's DTR.

48. One affected former Corinthian student is Diana Vara, who enrolled in the medical assistant program at Everest Chelsea in December 2013 and graduated from the program. She is specifically listed in Exhibit 4 to the DTR, and the AGO requested that her loans be discharged. The Department has found that the students who enrolled in her program during the period in which she was enrolled were subject to job placement misrepresentations. Nevertheless, the Department has instituted involuntary collections against Ms. Vara, including an offset of her tax refund on April 24, 2019.

**C.     The Department's Actions Harm Massachusetts Borrowers and Residents**

49. The Department's constructive denial of the DTR Application and its refusal to grant loan discharges to former Corinthian students in Massachusetts have harmed thousands of Massachusetts residents who were defrauded by Corinthian. These former Corinthian students have been subjected to continuing collection activities and continue to have delinquent or defaulted federal loans listed on their credit reports. As a result, the economic health and well-being of these borrowers and their families have been substantially harmed.

50. The Department's actions have negatively affected borrowers' financial and educational opportunities, limiting their ability to obtain employment and housing and

constraining their ability to continue their education in order to improve their lives and support their families.

51. Federal law prohibits students with defaulted federal loans from obtaining grants, loans or work assistance under Title IV. 20 U.S.C. § 1091(a)(3); 34 C.F.R. § 668.32(g)(1). As such, many borrowers who defaulted on their Corinthian loans will be ineligible for additional financial aid, including additional federal loans and participation in the Federal Work-Study Program until the Department acts on the DTR Application.

52. For borrowers not in default, their Corinthian loans count against maximum aggregate federal loan limits, thereby limiting the amount of further loans available for them to continue their education.

53. Examples of specific students harmed by the Department's actions are detailed below.

**D.  The Department's Actions Harm Massachusetts' Sovereign and Quasi-Sovereign Interests**

54. Massachusetts has "quasi-sovereign" interests in the health and well-being—both physical and economic—of its residents, including former Corinthian students and their families. The Commonwealth's interests extend to the availability of financial and educational opportunities for these residents, their ability to continue their education and obtain higher-paying jobs to support themselves and their families, and their ability to improve their lives after having fallen victim to predatory schools.

55. Furthermore, Massachusetts has a longstanding interest in promoting consumer protection, including in stopping, preventing, and redressing fraud in connection with the advertising and sale of educational services by for-profit colleges within its borders. These

consumer protection interests include ensuring that Massachusetts consumer protection laws are adequately enforced and that the victims of predatory schools receive full restitution.

56. Massachusetts also has an interest in promoting opportunities for education in Massachusetts' public colleges and universities and in deterring private, predatory schools from unfairly competing with them. Massachusetts devotes extensive resources towards post-secondary education of its residents, recognizing that post-secondary education is an integral aspect of living and working in Massachusetts.

57. States have historically been the primary regulators of higher education, performing this function prior to the existence of the federal government. Currently, Massachusetts is a member of the "triad" of actors—the federal government, state governments, and accreditors—that regulate post-secondary education. One of the State's primary roles in the triad is consumer protection. Accordingly, Massachusetts has a strong interest in the regulation of post-secondary schools within its borders.

58. The Higher Education Act increased the role of the federal government in post-secondary education, primarily by creating the system of grants, subsidies, and loans that fund higher education to this day. Federal law provides the exclusive means to discharge student loan debt. Because of the cost of education, federal aid plays a significant role in access to education within Massachusetts. Massachusetts has an interest in making sure that Massachusetts residents are able to obtain appropriate relief when Massachusetts law is violated, including in connection with these loans which substantially impact the ability of Massachusetts students to continue their education.

59. The Department's failure to consider and act upon the DTR Application and rejection of the AGO's authority to submit defense to repayment applications on behalf of

harmed student borrowers, has caused injury to the Commonwealth's sovereign and quasi-sovereign interests and has undermined the Commonwealth's ability to vindicate the interests of defrauded consumers and ensure their economic well-being.

**E.      The Department's Actions Harm Massachusetts Public Colleges and Universities**

60.     The Department's actions directly and indirectly harm Massachusetts public colleges and universities.

61.     The mission of Massachusetts' public colleges and universities is set by statute. Massachusetts General Law, Part I, Title II, Chapter 15A, Section 1 states that: "[b]y maintaining a high quality system of public colleges and universities, the commonwealth moves toward achieving the following goals:

> (a) to provide its citizens with the opportunity to participate in academic and educational programs for their personal betterment and growth, as well as that of the entire citizenry;
>
> (b) to contribute to the existing base of research and knowledge in areas of general and special interest, for the benefit of our communities, our commonwealth and beyond; and
>
> (c) to understand the importance of higher education to the future of the economic growth and development of the commonwealth, and, by so doing, prepare its citizens to constitute a capable and innovative workforce to meet the economic needs of the commonwealth at all levels.

62.     The Department's failure to consider the DTR Application prevents former Corinthian students from enrolling in Massachusetts' public colleges and universities because of their outstanding student loans related to Corinthian. In particular, Massachusetts community colleges are required to admit any Massachusetts resident possessing a high-school diploma or equivalent.

63.     As detailed above, federal law prohibits students from securing additional federal financial aid when they have either defaulted on their federal student loans or reached the maximum aggregate federal-loan limit. 20 U.S.C. § 1091(a)(3); 34 C.F.R. § 668.32(g).

64. Additionally, regardless of the availability of federal aid, many students are unable to take on the additional debt burden necessary to continue their education as a result of their outstanding Corinthian debt.

65. As an example, former Corinthian student N.A. attended Everest Institute in Brighton, Massachusetts in 2010 and 2011. She obtained federal loans to attend Everest. She graduated in 2011 and has not been able to find a job in her field of study with her Everest diploma. N.A. is interested in enrolling in Roxbury Community College to continue her education but is unable to do so because of her outstanding Corinthian federal student loan debt. If her defaulted Corinthian loans were fully discharged, N.A. would be eligible for additional financial aid and would be able to afford to continue her education at a Massachusetts Community College. N.A. is one of the students covered by the DTR Application.

66. As another example, former Corinthian student G.C. graduated from Everest Institute in Chelsea, Massachusetts in 2014. G.C. obtained federal student loans to attend Everest. She was enrolled in Everest's medical assistant program for the purpose of obtaining a phlebotomy certification. While G.C. was enrolled at Everest, the school canceled its phlebotomy certification program. To this day, G.C. has been unable to obtain a job in her field of study with her Everest diploma. G.C. would like to continue her education by enrolling at Roxbury Community College. When she sought to enroll, she was informed that she was not eligible for financial aid due to her outstanding federal loan debt. Without additional federal aid, she cannot afford to continue her education at Roxbury Community College. If G.C.'s Corinthian federal student loans were fully discharged, G.C. would be eligible for additional financial aid and would be able to afford to continue her education at Roxbury Community College. G.C. is one of the students covered by the DTR Application.

67. As detailed above, N.A. and G.C. cannot continue their educations at Massachusetts public colleges and universities because of the Department's constructive denial of the DTR Application and the borrower relief requested by the AGO. These borrowers cannot afford to continue their educations at Massachusetts public colleges, which they would otherwise attend if their loans were forgiven.

68. The loss of these students and others like them also harms Massachusetts by depriving the State of the opportunity to hire these students through the Federal Work-Study Program. 20 U.S.C. §§ 1087-51-58. Employers eligible under the Federal Work-Study Program include, among others, Massachusetts public colleges and universities, as well as Massachusetts state agencies. *Id.* § 1087-51(c). The program encourages students to participate in community-service activities and engenders in students a sense of social responsibility and commitment to community. 20 U.S.C. § 1087-51(a). Financial aid through the Federal Work-Study Program mutually benefits both eligible students and eligible employers. Students benefit by earning money to help with their educational expenses. Employers benefit by receiving a subsidy from the federal government that, in most cases, covers more than 50% of the student's wages. In some cases, such as for reading or mathematics tutors, the federal share of wages can be as high as 100%. Former Corinthian students that have defaulted on their federal student loans are ineligible to participate in the Federal Work-Study Program. 20 U.S.C. § 1091(a)(3); 34 C.F.R. § 668.32(g). Massachusetts public colleges and universities, as well as Massachusetts state agencies, are therefore unable to hire these students under the program.

69. Defendants' actions have caused injury to the Commonwealth's proprietary interests. The Commonwealth is directly harmed when students are prevented from attending its public education institutions such as community colleges and public universities because of their

outstanding loan balances or because their loan status (*e.g.*, borrowers currently in default) prohibits them from receiving any additional federal funding. *See* 34 C.F.R. § 685.200(d).

## CAUSE OF ACTION

### COUNT 1

**Unlawful Refusal to Discharge Loans - Violation of the APA § 706(2)**

70. Massachusetts repeats and re-alleges paragraphs 1 through 69 of the Complaint.

71. Defendants have violated the APA, 5 U.S.C. § 706(2), by rejecting the AGO's submission as establishing a borrower defense for each individual listed in Exhibit 4.

72. Pursuant to the APA, a court "shall [] hold unlawful and set aside agency action" that is "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

73. The AGO's DTR Application validly invoked a borrower defense on behalf of each individual listed in Exhibit 4.

74. A borrower defense is an objection to the legal enforceability of the underlying debt.

75. At some point following the Department's receipt of the AGO's DTR Application, the exact date of which is known to the Defendant, the Department determined that it was not sufficient to establish a borrower defense for the individuals listed in Exhibit 4.

76. This determination is a final agency action rejecting the AGO's DTR Application, as augmented by additional information in the Department's possession.

77. This final agency action is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and was made without observance of procedure required by law.

78. As a result of this final agency action, the Department continues to assert the validity of the loans of the individuals listed on Exhibit 4, including by reporting the debt as owed to consumer reporting agencies, and taking actions to collect on the loans.

79. The Court should find unlawful and set aside the Department's final agency action rejecting the borrower defense application of the AGO on behalf of every individual listed on Exhibit 4.

## PRAYER FOR RELIEF

WHEREFORE, the Commonwealth respectfully requests that this Court enter a judgment in its favor and order the following relief:

A. Declare that the Department's rejection of the AGO's DTR Application is arbitrary and capricious and thus vacated;

B. Compel the Department to issue a non-arbitrary decision on the merits of the AGO's DTR Application as to each individual listed in Exhibit 4, taking into account the AGO's evidence and all other evidence in the Department's possession, within 60 days of the Court's Order;

C. Declare that the individuals listed in Exhibit 4 have established a defense to the repayment of their federal student loans;

D. Retain jurisdiction to ensure that the Department complies with the law as declared by the Court; and

E. Grant such further relief as may be just and proper.

Dated: October 22, 2019

        Respectfully submitted,

        COMMONWEALTH OF MASSACHUSETTS
        MAURA HEALEY
        MASSACHUSETTS ATTORNEY GENERAL

By: */s/ Yael Shavit*
    Yael Shavit (BBO# 695333)
    Diana Hooley (BBO# 685418)
    Assistant Attorneys General
    Office of the Massachusetts Attorney General
    One Ashburton Place
    Boston, MA 02108
    (617) 963-2197 (Shavit)
    (617) 963-2198 (Hooley)
    Yael.Shavit@mass.gov
    Diana.Hooley@mass.gov