UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Commonwealth of Massachusetts<br><br>　　　　Plaintiff,<br><br>v.<br><br>United States Department of Education and Elisabeth DeVos, in her official capacity as Secretary of Education,<br><br>　　　　Defendants. | Civil Action No. 1:19-12177-LTS |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

Respectfully submitted,

United States Department of Education and Elisabeth DeVos, Secretary of Education

By their attorney,

Andrew E. Lelling
United States Attorney

By:  /s/Annapurna Balakrishna
　　　Annapurna Balakrishna
　　　Anita Johnson
　　　Assistant United States Attorneys
　　　United States Attorney's Office
　　　One Courthouse Way - Suite 9200
　　　Boston, Massachusetts 02210
　　　(617) 748-3111
Dated: January 27, 2020　　　annapurna.balakrishna@usdoj.gov

# <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................2

    1.      Federal law requires the Secretary to engage in collection
            efforts if a borrower defaults on a Ford Program Loan ...................2

    2.      Education's regulations allow a borrower to raise a defense
            to repayment of  a Direct Loan if a school engages in
            conduct that violates State law ...................................................2

    3.      Following the collapse of Corinthian Colleges, Education
            simplified its borrower defense application process and
            revised its regulations ...............................................................3

    4.      The Commonwealth obtained a judgment ordering Corinthian
            to refund students and asked Education to discharge
            about 7,000 loans ....................................................................4

    5.      A federal judge held that the Commonwealth lacked standing
            to challenge Education's response to the DTR Submission ............5

    6.      In this lawsuit, Commonwealth has characterized Education's
            response to the DTR Submission and its continuing efforts
            to collect debts as arbitrary and capricious ...............................7

ARGUMENT ......................................................................................7

I.    The Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1)
    for lack of standing and because the challenged action is committed
    to Education's discretion ....................................................................7

    A.    To have standing, the Commonwealth must show that Education
            caused the alleged harms and that its claim is based on its own
            legal rights ...............................................................................8

        1.      The Commonwealth lacks Article III standing because it
                cannot trace the alleged harms to unlawful action by
                Education or the Secretary ...................................................8

        2.      Prudential principles dictate against a finding of
                standing here ...................................................................10

B.      This Court also lacks jurisdiction because the Higher Education
        Act does not contain any law for the Court to apply in
        evaluating the claim presented ............................................................. 12

C.      Congress in the Higher Education Act did not waive
        sovereign immunity for claims that seek injunctive relief .................. 14

II.   The Commonwealth fails to state a claim upon which relief
      may be granted ............................................................................................. 17

A.      The Complaint does not allege illegal action by the
        Education or the Secretary ..................................................................... 17

B.      The Commonwealth's claim is barred by the doctrine
        of res judicata ......................................................................................... 19

CONCLUSION ....................................................................................................... 20

**Background**

1.  **Federal law requires the Secretary to engage in collection efforts if a borrower defaults on a Direct Loan.**

This case concerns the William D. Ford Federal Direct Loan Program, which is authorized under the Higher Education Act of 1965.  20 U.S.C. § 1087a.  Under this program, students can receive loans from the federal government (Direct Loans) to pay for educational expenses.  *Id.*  Generally, students must repay such loans.  *Id.* § 1087e(d); 34 C.F.R. § 685.207(a).

"The head of an … executive agency," such as the Secretary, "shall try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency."  31 U.S.C. § 3711(a)(1).  A "claim'" or "debt" is "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States."  *Id.* § 3701(b)(1).  So long as she follows certain procedural requirements, the Secretary can collect Education's debts through various tools, including administrative offset of federal nontax and tax refund payments and wage garnishment.  31 U.S.C. §§ 3716(c)(6), 3720a, 3720d.

2.  **Education's regulations allow a borrower to raise a defense to repayment of a Direct Loan if a school engages in conduct that violates State law.**

The Higher Education Act requires the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a Direct Loan.  20 U.S.C. § 1087e(h).  Under such authority, 34 C.F.R. § 685.206(c) was promulgated to allow a borrower to assert a defense to repayment.  The regulation codified the Secretary's "long-standing authority to relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school."  Federal Direct Student Loan Program, Notice of Proposed Rulemaking, 59 Fed. Reg. 42,646, 42,649 (Aug. 18, 1994).

Until July 1, 2014, the regulation in pertinent part read as follows:

(c) Borrower defenses.

> (1) In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law. These proceedings include, but are not limited to, the following:
>
>> (i)     Tax refund offset proceedings under 34 CFR 30.33.
>>
>> (ii)    Wage garnishment proceedings under section 488A of the Act.
>>
>> (iii)   Salary offset proceedings for Federal employees under 34 CFR part 31.

34 C.F.R. § 685.206(c) (1995 ed.) (text effective to June 30, 2014, attached as Exhibit 1).  The

regulation further provided:

> If the borrower's defense against repayment is successful, the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay. The Secretary affords the borrower such further relief as the Secretary determines is appropriate under the circumstances.

*Id.* § 685.206(c)(2).

**3.      Following the collapse of Corinthian Colleges, Education simplified its borrower defense application process and revised its regulations.**

Corinthian Colleges, Inc. (Corinthian) was a publicly traded company that operated

postsecondary schools across the country.  Stipulations of Fact (ECF No. 15) at ¶ 1.  In 2015,

following numerous investigations for misconduct, Corinthian filed for bankruptcy.  *Id.* ¶ 5.

Between 1995 and 2015, the borrower defense regulation was "rarely used."  81 Fed. Reg.

39,330, 39,330 (June 16, 2016).  Immediately after Corinthian collapsed, Education received "a

flood of borrower defense claims submitted by Corinthian students."  *Id.*  By 2019, Education had

received about 290,000 claims.  https://www.ed.gov/sites/default/files/documents/borrower-

defense-relief.pdf (December 10, 2019, Policy Statement) (accessed January 22, 2020).

In response to this flood of requests, Education in 2016 published information on its website to educate borrowers on the availability of relief from their loans. *See* ECF No. 15, ¶ 7. Education created attestation forms in which borrowers could apply for a borrower defense loan discharge by verifying the program they attended and certifying that they chose to attend the schools based on the schools' promotional materials and other available information regarding job placement rates and the quality of education provided by the schools. *Id. ¶* 8.

Education also revised its borrower defense regulation at 34 C.F.R 685.206(c) (text effective between July 2014 and March 2019 attached as Exhibit 2) and promulgated a new regulation at 34 C.F.R. § 685.222. The new regulation created a factfinding process for reviewing applications and stated that the Secretary, upon consideration of certain factors, "may initiate a process to determine whether a group of borrowers, identified by the Secretary, has a borrower defense." 34 C.F.R. §§ 685.222(e), (f)(1).[1]

Since 2016, Education has been reviewing, adjudicating, and processing the claims. By November 12, 2019, Education resolved about 65,000 applications. ECF No. 15 at ¶ 9. And in December 2019, Education released a new borrower defense methodology that would allow it to adjudicate borrower defense claims that are entitled to partial relief. *Id.* ¶ 10.

### 4.     The Commonwealth obtained a judgment ordering Corinthian to refund students and asked Education to discharge about 7,000, loans

In 2014, the Commonwealth sued Corinthian in state court for misrepresenting, among other things, the quality of its programs and job placement rates. ECF No. 15 at ¶ 2 & Ex. 1. In 2016, a state court judge granted summary judgment for the Commonwealth and ordered Corinthian to refund students who attended certain programs between 2007 and 2014. *Id.* ¶¶ 3, 4 & Exs. 2-3. Corinthian's collapse precluded them from paying the judgment. ECF No. 1, ¶ 28.

---

[1] New regulations are set to go into effect on July 1, 2020. 84 F.R. 49788 (September 23, 2019).

In November 2015, the Commonwealth's Attorney General's Office (the AGO) submitted a defense to repayment request (the DTR Submission) to Education that sought cancellation of federal student loan debt incurred by Massachusetts students who attended Corinthian.   ECF No. 15 at ¶ 11 & Ex. 5.   Exhibit 3 to the DTR Submission contained 190 pages that were filled out and signed by 30 former Corinthian students.   *Id.* ¶ 12 & Ex. 6.   Exhibit 4 to the DTR Submission contained the names, dates of enrollment, contact information, and programs attended of 7,241 students.   *Id.* ¶ 13.

On January 8, 2016, Education responded to the DTR Submission.   ECF No. 15 at ¶ 14.   In its response, Education acknowledged having reviewed the DTR Submission and noted that "some evidence referred to in those documents was not included in the submission."   *Id.* ¶ 15 & Ex. 7. Education then conveyed its specific concerns to the AGO.   *Id.* at Ex. 7.   Education asked the AGO to provide "recalculated rates or backup data to support recalculated rates for any other years or other programs at Brighton" and "recalculated rates for the Chelsea campus."   *Id.*   Education also asked the AGO for additional corroborating documentation and evidence.   *Id.*   Education concluded by stating that it would work towards providing a fair, transparent, and efficient process for debt relief and with the AGO to help the Massachusetts students.   *Id.*

Subsequently, Education forwarded the individual applications in Exhibit 3 to the DTR Submission to its borrower defense unit for adjudication.   ECF No. 15 at ¶ 16.

**5.      A federal judge held that the Commonwealth lacked standing to challenge Education's response to the DTR Submission.**

In December 2017, the Commonwealth challenged Education's response to the DTR Submission in the District of the District of Columbia.   *Commonwealth of Massachusetts v. United States Dep't of Educ.*, Case No. 1:17-cv-02679-TNM (D.D.C.) (the *DDC Lawsuit*) (docket attached as Exhibit 3) at ECF No. 1.   In the *DDC Lawsuit*, the Commonwealth alleged that Education violated the Administrative Procedure Act and acted arbitrarily and capriciously by

attempting to collect on the Direct Loans of Corinthian students and that, because of information submitted in the DTR Submission and other materials, Education "knew or should have known that the student loan debts . . . were not legally enforceable or owed." *DDC Lawsuit*, ECF. No. 21 (Amended Complaint) (attached as Exhibit 4) at ¶¶ 119-120.   The Commonwealth sought a declaration that the loans listed in the DTR Submission were not legally enforceable and that the identified borrowers had valid defenses to repayment. *Id.* at 30 (Prayer for Relief).

Education moved to dismiss the DDC Lawsuit, arguing, *inter alia*, that the Commonwealth did not have standing. *DDC Lawsuit*, 340 F. Supp. 3d 7, 10 (D.D.C. 2018).   Education contended that the Commonwealth could not assert standing as parens patriae against the federal government or show that Education caused the alleged injury. *Id.* at 11.   The Commonwealth argued: 1) they had alleged sufficient harm to "their sovereign interests in the correct interpretation of [] state laws as incorporated into federal law"; 2) they had a quasi-sovereign interest in the well-being of their citizens that allowed them to sue as parens patriae; and 3) Education's "unlawful collection activities" harmed their "proprietary interests." *Id.*

The District Court in the DDC Lawsuit granted Education's motion to dismiss. *See DDC Lawsuit*, 340 F. Supp. 3d at 12-18.   In doing so, the District Court held that the Commonwealth did not have standing to press its claim because: 1) the Commonwealth could not show that its laws had been misapplied and therefore failed to establish standing based on harm to its sovereign interests, *id.* at 12-14; 2) absent exceptional circumstances that were not present in the DDC Lawsuit, a State cannot represent its citizens to ensure protection under federal law, *id.* at 14-17; and 3) the Commonwealth's alleged injuries to its proprietary interests were not sufficiently concrete or particularized to support standing. *Id.* at 17; and 4) the Commonwealth did not establish that Education's action caused the alleged harms, *id.* at 17-18.   The Commonwealth did not appeal that decision. *See* Exhibit 3.

**6.     In this lawsuit, Commonwealth has characterized Education's response to the DTR Submission and its continuing efforts to collect debts as arbitrary and capricious.**

On October 22, 2019, the Commonwealth filed this lawsuit.  *See* ECF No. 1.  The Complaint alleges that Education and the Secretary violated the Administrative Procedure Act at 5 U.S.C. § 706(2) by failing to consider, constructively denying, or rejecting the DTR Submission.  *E.g., id.* ¶¶ 2, 12, 47, 67, 71.  To support that claim, the Commonwealth contends that: 1) the "DTR [Submission] validly invoked a borrower defense," *id.* ¶ 73; 2) Education "determined that [the DTR Submission] was not sufficient to invoke a borrower defense," *id.* ¶ 75; 3) Education's action is "final agency action rejecting the [] DTR [Submission]," *id.* ¶ 76; 4) this action is arbitrary, capricious, an abuse of discretion, illegal, and made without observing legally required procedures, *id.* ¶ 77; and 5) Education continues to "assert the validity of the loans" by "reporting the debt as owed to consumer reporting agencies, and taking actions to collect on the loans," *id.* ¶ 78.  The Commonwealth asks the Court to: declare that Education's "rejection" of the DTR Submission is arbitrary and capricious; compel Education to issue a "non-arbitrary decision on the merits of the [] DTR [Submission]"; declare that the borrowers identified by the Commonwealth have "established a defense to the repayment of their student loans"; "[r]etain jurisdiction to ensure that [Education] complies with the law as declared by the Court"; and grant other appropriate relief. *Id.* at 18 (Prayer For Relief).

## Argument

**I.     The Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of standing and because the challenged action is committed to Education's discretion.**

This Court does not have jurisdiction over the claim asserted in this lawsuit.  *First*, the Commonwealth lacks standing.  The Commonwealth had not identified an injury that directly resulted from unlawful action by *Education*, and the Court should not allow the Commonwealth to sue the Federal government as parens patriae where, as here, the Commonwealth has not alleged

a sovereign or quasi-sovereign interest that is not shared by the federal government. *Second,* judicial review of the claim is precluded by 5 U.S.C. § 701(a)(2). Education's decision to grant the type of group discharge sought by the Commonwealth is committed to Education's discretion by law, and there are no laws, rules, policies, or other meaningful law for the Court to apply in evaluating Education's action, *Third*, Congress in the Higher Education Act did not waive sovereign immunity for claims that essentially seek injunctive relief.

### A.     To have standing, the Commonwealth must show that Education caused the alleged harms and that its claim is based on its own legal rights.

"The Constitution limits the judicial power of the federal courts to actual cases and controversies." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 1). "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Id.* at 71 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "To satisfy the personal stake requirement, a plaintiff must establish . . . injury, causation, and redressability." *Id.* (citation omitted). These requirements are known as Article III standing. *Id.*

Standing also has prudential dimensions. *Katz*, 672 F.3d at 72. For the Commonwealth to have prudential standing, its claims: 1) must be based on its own legal rights (and not those of a third party); 2) cannot be generalized grievances; and 3) and must fall "within the zone of interests protected by the law invoked." *Id.* (cleaned up).

### 1.   The Commonwealth lacks Article III standing because it cannot trace the alleged harms to unlawful action by Education or the Secretary.

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, an

injury must be . . . fairly traceable to the challenged action." *Id.* at 409 (cleaned up). "[I]n all cases of loss, [courts] are to attribute it to the proximate cause, and not to any remote cause." *Lexmark Intern., Inc. v. Static Control Components, Inc.* 572 U.S. 118, 132 (2014) (*Lexmark*) (cleaned up). "That venerable principle reflects the reality that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." *Id.* (cleaned up).

"Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark,* 572 U.S. at 133. "Put differently, the proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Id.* (cleaned up).

When viewed in light of these standards, the Complaint has two fatal flaws. First, as explored in Argument Part I.B and II.A *infra*, the Commonwealth has not identified an act of the defendants that violated a federal law. *See DDC Lawsuit*, 340 F. Supp. 3d at 16 (concluding that standing was absent where the Commonwealth "point[ed] to no federal statute or source of Congressional intent with which [Education's] conduct is inconsistent"). More fundamentally for the standing analysis, the harms alleged are not fairly traceable to anything *the defendants* did.

Indeed, the Commonwealth does not link the alleged harms to Education's activity. The Complaint alleges that Massachusetts borrowers have been harmed in many ways by having delinquent and defaulted loans on their credit reports and being subject to collection, and that the Commonwealth, because of such injuries, has suffered harm to its sovereign interests in the health and well-being of its residents, in promoting consumer protection, in promoting educational opportunities in its public colleges and universities. ECF No. 1, ¶¶ 49-68. The Commonwealth further alleges that the defendants' acts and omissions harmed their proprietary interest. *Id.* ¶ 69 ("The Commonwealth is directly harmed when students are prevented from attending its public

education institutions such as community colleges and public universities because of their outstanding loan balances or because of their loan status [] prohibits them from receiving any additional federal funding.")   But as even the Commonwealth acknowledges, *see id* ¶¶ 24-32, *Corinthian's* fraud, and subsequent collapse, and not Education's lawful collection activity and exercise of the discretion granted to it by Congress, caused these problems.

In any event, as detailed on page 5 *supra*, Education tried to help borrowers who were defrauded by Corinthian.  Education published information on its website to educate borrowers on the availability of relief from their loans and created attestation forms to simplify the borrower defense application process.  Education also revised its borrower defense regulation at 34 C.F.R § 685.206(c) and promulgated a new regulation that created a detailed factfinding process for reviewing applications and stated that the Secretary, upon consideration of certain factors, "may initiate a process to determine whether a group of borrowers, identified by the Secretary, has a borrower defense."  34 C.F.R. § 685.222(f)(1); *see id.* § 685.222(e).  Education placed the 30 applications submitted by the AGO into a queue for adjudication.  ECF No. 15 at ¶ 16. And since 2016, Education has adjudicated 65,000, borrower defense applications.  *Id.* at ¶ 9.

### 2. Prudential principles dictate against a finding of standing here.

As a prudential matter, the Court should not allow the Commonwealth to sue the federal government as parens patriae to protect its citizens from Education's lawful administration of the Higher Education Act and authorized debt collection activity.  *Cf. Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 336 (1st Cir. 2000) (affirming dismissal of lawsuit against farmer on ground that Mexico lacked standing to maintain action as parens patriae).  "[A] State has standing to sue [as parens patriae] only when its sovereign or quasi-sovereign interests are implicated and it is not merely litigating as a volunteer the personal claims of its citizens." *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976) (citations omitted).  Each borrower listed in the DTR Submission

can directly seek relief with Education, and the Commonwealth has not alleged that any borrower

cannot do so.[2]  In that sense, the Commonwealth's claim compares to the ones rejected in *Missouri*

*ex rel. Koster v. Harris,* 847 F.3d 646, 651-652 (9th Cir. 2017), on the grounds that the six involved

States had asserted the claims of a discrete group of citizens (egg farmers) and not their population

as a whole.

Second, even if the Court concludes that the Complaint asserts harms to the

Commonwealth's sovereign or quasi-sovereign interests, "the citizens of Massachusetts are also

citizens of the United States.  It cannot be conceded that a State, as parens patriae, may institute

judicial proceedings to protect citizens of the United States from the operation of the statutes

thereof."  *Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923); *DDC Lawsuit*, 340 F. Supp. 3d at

15.  Indeed, as a federal judge recently concluded when the Commonwealth previously brought

claims regarding the defendants' response to the DTR Submission:

> [B]oth the States and the federal government—through [Education]—share the same quasi-sovereign interest in the economic well-being of their citizens who were defrauded by Corinthian.  Exemplifying this fact, [Education], like the States, investigated Corinthian and took steps to alleviate the harm that the company's fraudulent conduct caused. [Education] responded with emergency measures to provide *ad hoc* relief to affected borrowers, simplifying the process to apply for a borrower defense to repayment and providing loan relief to borrowers who were able to establish that they relied on those misrepresentations.  Where both the States and the federal government share a quasi-sovereign interest, the federal interest will generally predominate and bar any *parens patriae* action.

*DDC Lawsuit*, 340 F. Supp. 3d at 16-17 (cleaned up).  For such reasons, the Commonwealth

"fail[s] to establish standing based on harm to their quasi-sovereign interests."  *Id.* at 17.

---

[2] Under the new regulations, upon receipt of a borrower defense application from a person who has defaulted, the Secretary "[s]uspends collection activity on the loan until the Secretary issues a decision on the borrower's claim."  34 C.F.R. § 685.222(e)(2)(ii)(A).  Indeed, Diana Vara, who is one of the borrowers mentioned in the Complaint, *see* ECF No. 1 at ¶ 48, submitted an individual application, and Education stopped the wage garnishment and reimbursed her for wages garnished. *See* Civil Action No. 19-12175-LTS (D. Mass.) (ECF No. 1 at ¶ 77).

**B.      This Court also lacks jurisdiction because the Higher Education Act does not contain any law for the Court to apply in evaluating the claim presented.**

"[A]gency action is not subject to judicial review to the extent that such action is committed to agency discretion by law." *Lincoln v. Vigil*, 508 U.S. 182, 190-191 (1993) (quoting 5 U.S.C. § 701(a)(2) (cleaned up)).  Accordingly, review is not available when "the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 191 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (cleaned up); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)) (*Overton Park)*. Section 701(a)(2) precludes judicial review not only where there is "no law to apply," *Overton Park*, 401 U.S. at 410, but also when a statute's standards do not lend themselves to judicial oversight—when, in other words, there are no "judicially manageable standards." *Heckler*, 470 U.S. at 830.  Moreover, because Section 701(a)(2) forecloses judicial review "to the extent that" agency action is committed to agency discretion by law, the question is not whether the statute is wholly devoid of judicially manageable criteria, but rather whether the statute contains criteria that govern the particular question presented.

The Commonwealth faults Education for not treating the DTR Submission as having presented 7,241, individual borrower defense claims and adjudicating those claims. *E.g.*, ECF No. 1 at ¶¶ 5-6, 49, 71, 73, 75-77.[3]  But the Higher Education Act contains no statutory criteria that

---

[3]  The Commonwealth asserts that "[t]his Court already has ruled that the AGO's DTR [Submission] validly asserted a borrower defense on behalf of these 7,241 former students and that [Education] has an obligation to act on the application." ECF No. 1 at ¶ 5.  This allegation purports to characterize the Order on Motions For Judgment in *Williams v. DeVos*, 2018 WL 5281741 (D. Mass. Oct. 24, 2018), in which the Court concluded that the DTR Submission "invoked a borrower defense proceeding" on behalf of 7,241, individuals, and declared that the DTR submission required the Secretary to decide the merits of the two named plaintiffs' borrower defenses. *Williams v. DeVos*, 2018 WL 5281741 at *15.  But a year earlier, the Court declined the plaintiffs' request to seek sweeping relief on behalf of all the borrowers named in the DTR Submission and denied the Commonwealth's request to intervene in that lawsuit. *Williams*, C.A. No. 1:16-cv-11949-LTS, ECF No. 35 (D. Mass. Sep. 14, 2017) (attached as Exhibit 5).

constrain Education's discretion in establishing guidelines for accepting or determining borrower

defense claims.  Regarding borrower defenses, the Higher Education Act states only:

> Notwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part, except that in no event may a borrower recover from the Secretary, in any action arising from or relating to a loan made under this part, an amount in excess from or relating to a loan made under this part, an amount in excess of the amount such borrower has repaid on such a loan.

20 U.S.C. § 1087e(h).  While Congress required the Secretary to promulgate borrower defense

regulations, it did not cabin the Secretary's discretion in any way.  *E.g.*, *Massachusetts Pub.*

*Interest Research Grp., Inc. v. Nuclear Regulatory Com'n*, 852 F.2d 9, 15 (1st Cir. 1988) (finding

no law to apply where statutory provisions "provide no guidance as to how the agency should

exercise its discretion").  Accordingly, the Higher Education Act provides no law for a court to

apply in reviewing Education's action regarding the DTR Application.

The regulations promulgated by Education that apply to this case also do not create any

legally binding requirements on Education or the Secretary.  In 2015, when the AGO submitted

the DTR Submission, the borrower defense regulation stated in relevant part:

- "In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law."  34 C.F.R. § 685.206(c)(1).

- "If the borrower's defense against repayment is successful, the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay.  The Secretary affords the borrower such further relief as the Secretary determines is appropriate under the circumstances."  34 C.F.R. § 685.206(c)(2).

*See* Ex. 2.  Consistent with the Higher Education Act, the regulation does not contain any criteria

or guidelines to apply in making the determination that a borrower successfully asserted a defense

to repayment.  The regulation only required the Secretary to notify the borrower if his or her

defense succeeds.

After responding to the DTR Submission in January 2016, Education promulgated a new borrower defense regulation at 34 C.F.R. § 685.222.  81 Fed. Reg. 76083 (Nov. 1, 2016).  This new regulation—which went into effect on July 1, 2019—created procedures for individual and group discharge requests.  34 C.F.R. §§ 685.222(e), 685.222(f).  The Commonwealth has not alleged that it asked the Secretary to consider the DTR Submission under 34 C.F.R. § 685.222(f).

But even if the Commonwealth had asked Education or the Secretary for a group process under 34 C.F.R. § 685.222(f), that regulation does not create legally binding limitations on the Education's discretion with respect to the question presented—*i.e.*, whether the group of borrowers listed in the DTR Submission should be treated as a group.  While the regulation created procedures for the evaluation of individual and group claims, it provides no substantive criteria for making that determination, leaving it instead to the discretion of the Secretary.  34 C.F.R. § 685.222(f)(1) ("[T]he Secretary may initiate a process to determine whether a group of borrowers identified by the Secretary has a borrower defense.").

Accordingly, neither the Higher Education Act nor any of the relevant regulations provide a basis for judicial review of a claim that Education or the Secretary erred by: 1) not treating the DTR Submission as 7,241, individual applications; or 2) not initiating a process to determine whether the all of people listed in the exhibits to the DTR Submission had a borrower defense.  Thus, there is no law for this Court to apply in evaluating the agency's action.  This Court should therefore dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction because the challenged action is committed to agency discretion by law.

### C.  Congress in the Higher Education Act did not waive sovereign immunity for claims that seek injunctive relief.

Congress, through the Higher Education Act, provided a limited waiver of sovereign immunity for suits by and against the Secretary.  *See* 20 U.S.C. § 1082(a)(2).  But while the Secretary can sue and be sued under the Higher Education Act, "no attachment, injunction,

garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control." *Id.* Relying on this provision, a federal judge recently held that "the limited waiver of sovereign immunity does not allow declaratory relief that functions as injunctive relief by another name." *Carr v. DeVos*, 369 F. Supp. 3d 554, 560 (S.D.N.Y. 2019).

While the First Circuit has not yet confronted this issue, other Federal appellate courts have concluded that requests for declaratory relief fall within the injunction exclusion of the Higher Education Act and of a similar statute where the relief sought is coercive with respect to future events. For example, in a challenge to Education's appeals process for determinations of a school's eligibility for a loan program, the Ninth Circuit concluded that Section 1082(a)(2) of the Higher Education Act barred such relief because "the relief requested is plainly coercive and therefore prohibited by the anti-injunction statute." *American Ass'n of Cosmetology Schools v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999) (holding lawsuit challenging Education's methodology was barred by the anti-injunction provision of the Higher Education Act).[4] And the Fifth Circuit in evaluating a statute with language that is similar to the Higher Education Act concluded that a plaintiff's request for declaratory relief to set aside an agency decision was "essentially no different than a request for an injunction preventing the agency from continuing to enforce its decision." *Expedient Services Inc. v. Weaver*, 614 F.2d 56, 58 (5th Cir. 1980) (holding relief was barred by the injunction exclusion in the Small Business Act at 15 U.S.C. § 634(b)(1), which contained the same "no injunction . . . or other similar process" language that is in the Higher Education Act).

For similar reasons, the Commonwealth's claim for declaratory relief here plainly falls within the injunction exclusion of the Higher Education Act. The requested declaration essentially seeks anticipatory relief against all future collection activity by the Department. ECF No. 1 at 18

---

[4]*Cf. Bank of America NT & SA v. Riley*, 940 F. Supp. 348, 351 (D.D.C. 1996) (holding the Higher Education Act did not bar banks from suing to obtain $16 million in special allowances allegedly already due in part because the requested relief was not "anticipatory" in nature).

(Prayer for Relief). The Commonwealth's requested relief is thus barred as "plainly coercive and therefore prohibited by [section 1082(a)(2)]." *American Ass'n of Cosmetology Sch.*, 170 F.3d at 1254; *see also Expedient Servs.*, 614 F.2d at 58; *Bank of Am. NT & SA*, 940 F. Supp. at 351.

Under certain circumstances, courts have declined to deem a claim seeking declaratory relief to fall within the injunctive exclusion even though such relief would have prospective effect. In these cases, the declaratory relief requested was targeted at the specific manner in which a delinquent education loan was collected and would not preclude other means of collection. *See Bartels v. Riley*, No. 98-8885 (11th Cir. June 29, 1999) (unpublished) ("*Bartels*") at 10-13[5] (permitting claim that challenged the Secretary's specific wage garnishment procedures on the grounds that the relief sought would not be an absolute bar to collection)[6]; *Thomas v. Bennett*, 856 F.2d 1165, 1166-69 & n. 3 (8th Cir. 1988) (holding that part of the relief sought was not barred by the anti-injunction provision of the Higher Education Act because it did not constitute a complete defense to collection).[7] But such circumstances do not exist here.

---

[5] The Eleventh Circuit permits its unpublished opinions to be "cited as persuasive authority," although they are not considered binding precedent. 11 Cir. R. 36-2. A copy of the unpublished *Bartels* opinion is attached as Ex. 6.

[6] The Eleventh Circuit reasoned:

> Granting this relief would not prevent the Secretary from collecting on loans altogether; it would only require the use of proper and constitutional garnishment and other collection measures. Consequently, the [Higher Education Act]'s 'anti-injunction' provision does not deprive the court of jurisdiction to consider the appropriateness of declaratory relief on the borrowers' due process claims.

*Id.* at 11.

[7] To the extent that the Eighth Circuit suggested in *Thomas* that plaintiff's debt might be fully paid by a third tax refund set-off "by the time judicial proceedings have been fully resolved," 856 F.2d at 1168, and that the case should not be deemed moot because identical legal issues would be raised in a suit "seeking return of the intercepted funds," *id.* at 1168 n.3, that case also comports with the former category of decisions that permit declaratory relief to proceed if it is not prospective in nature.

Specifically, unlike the plaintiffs in the cases cited in the previous cases, the Commonwealth here seeks a *total ban* on future collection.  The Commonwealth challenges the enforceability of the loans as a general matter and seeks a blanket declaration that "the individuals listed in Exhibit 4 have established a defense to the repayment of their federal student loans."  ECF No. 1 at 18 (¶ C).  Such relief, regardless of what name a plaintiff gives it, is the equivalent of injunctive relief for purposes of section 1082(a)(2).  *Thomas*, 856 F.2d at 1169 (affirming tax refund setoffs where plaintiff "has not asserted that her loan has become substantively unenforceable"); *Green v. United States*, 163 F. Supp. 2d 593, 597 (W.D.N.C. 2000) ("An action that seeks to prohibit the government from collecting a debt seeks injunctive relief.").

The Commonwealth cannot show that its requested relief would bar only certain avenues for collection, which is the reasoning that permitted claims for declaratory relief in *Bartels* at 10-13 (wage garnishment procedures) and *Thomas*, 856 F.2d at 1168-69 (tax refund set-off).  Because the requested declaration would provide a complete defense to collection, rather than restrict a particular means of collection, it thus would "prevent the Secretary from collecting on [the] loans altogether," *Bartels* at 11, and for that reason also falls within the injunction exclusion.

## II.    The Commonwealth fails to state a claim upon which relief may be granted.

### A.  The Complaint does not allege illegal action by Education or the Secretary

The Higher Education Act, which is one of the statutes cited by the Commonwealth as the jurisdictional basis for its claim, *see* ECF No. 1 at ¶ 12, does not require Education grant or deny the relief sought in the DTR Submission.  Nor does it, or any other law, require Education or the Secretary to stop all collection efforts related to the people listed in the DTR Submission.  And, as the Commonwealth acknowledges, Congress has authorized Education to collect defaulted loans.  ECF No. 1 at ¶ 17.  Indeed, "the law embodying Congressional intent appears to *require*

[Education] to continue its attempts to collect such debts." *DDC Lawsuit*, 340 F. Supp. 3d at 16 (emphasis in original) (citing 31 U.S.C. § 3711(a)(1); 31 U.S.C. § 3716(c)(6)(A)).

In any event, Education's response to the DTR Submission was not arbitrary or capricious. "An agency action is arbitrary and capricious if the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Cowels v. Federal Bureau of Investigation*, 936 F.3d 62, 67 (1st Cir. 2019), *petition for cert. filed* (Dec. 20, 2019) (No. 19-796) (cleaned up) (affirming the FBI's action to deny a request to upload a DNA profile into a national database). Here, Education responded to the DTR Submission and articulated reasons in its response.

Indeed, as the Commonwealth acknowledges, less than six weeks after the date of DTR Submission, Education responded to the AGO in writing. ECF No. 15 at ¶¶ 16-17 & Ex. 7. In that writing, Education acknowledged that it reviewed the application, asked the AGO to provide information, and anticipated providing a process for debt relief for all students and working with the AGO to benefit Massachusetts students. *Id.* at Ex. 7. Education placed the individual applications into the queue for adjudication, simplified the application process and overhauled its regulations to provide protections for borrowers, such as forbearance from debt collection while their applications were pending, and codify a process by which group discharges applications could be considered. *Id.* ¶¶ 7-10.

Education responded to the DTR Submission. No law required Education to do anything else. Accordingly, should this Court conclude that it has jurisdiction to review the action challenged by the Commonwealth, it should nevertheless dismiss the claim under Fed. R. Civ. P. 12(b)(6) because the allegations, when viewed as a whole, do not support an argument that the defendants acted illegally, arbitrarily, or capriciously.

18

**B. The Commonwealth's claim is barred by the doctrine of res judicata.**

"[A] final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Hatch v. Trail King Industries, Inc.*, 699 F.3d 38, 45 (1st Cir. 2012) (citation omitted)(cleaned up). "The three elements of claim preclusion are: (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Id.* (citation omitted) (cleaned up).

Here, the first element and third elements are met easily. All parties in this suit were parties in the *DDC Lawsuit.* 340 F. Supp. 3d at 10. That the *DDC Lawsuit* was decided on jurisdictional grounds does not mean the Commonwealth can raise the same standing arguments it made there to this Court. *Dynaquest Corp. v. United States Postal Serv.*, 242 F.3d 1070, 1075 (D.C. Cir. 2001) (rejecting claim that decision based on jurisdictional grounds was not on "the merits" and ruling that dismissal should preclude litigation on the same issue of jurisdiction); *cf. Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000) ("[D]ismissal for lack of subject matter jurisdiction precludes relitigation of the issues determined in ruling on the jurisdictional question."). The Order itself, which is attached as Exhibit 7*,* states that it is final and appealable, and it is not apparent from the face of the Complaint that the Commonwealth has different grounds for standing here than it did in the District of the District of Columbia.

Regarding the third element, the following standard applies in the First Circuit:

> To bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. We have adopted a transactional approach to determine whether causes of action are sufficiently related to support a res judicata defense. Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions. This boils down to whether the causes of action arise out of a common nucleus of operative facts. In mounting this inquiry, we routinely ask whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.

19

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998) (cleaned up).  Under that standard, claim preclusion applies here, because both suits arise out a common nucleus of operative facts - Education's response to the DTR Submission. Specifically:

- In the *DDC Lawsuit,* the Commonwealth, along with two other States, sued Education and the Secretary to "challenge[] [Education's] collection activity" regarding debts incurred by Corinthian enrollees as arbitrary and capricious under the Administrative Procedure Act. *DDC Lawsuit*, 340 F. Supp. 3d at 10.

- The Amended Complaint in that lawsuit alleged that the AGO submitted the DTR Submission on behalf of more than 7,000, residents and that Education acted arbitrarily and capriciously by continuing to treat the debts of individuals listed on that application as legally enforceable.  Ex. 4 at ¶¶ 18, 118-121.

- In the Complaint in this case, the Commonwealth alleges that Education "has continued to collect on the loans of former Massachusetts Corinthian students, including by seizing the tax refunds and garnishing the wages of individuals specifically named by the AGO as qualifying for loan cancellation."  ECF No. 1 at ¶ 5.

- The Commonwealth also alleges that Education "has not treated the DTR [Submission] as a valid borrower defense to repayment claim and has not granted the requested discharges" and "has continued its efforts to collect the debts of students included in the DTR [Submission]."  ECF No. 1 at ¶¶ 38-39.

As were the facts supporting the claims in the two lawsuits at issue in *Massachusetts School of Law at Andover, Inc.*, "conduct that underbraces the two sets of claims [here] is strikingly similar in time, space, origin, and motivation."  142 F.3d at 38.  "Both suits stem from [the AGO's] failed efforts in" 2015 to obtain a group discharge of the loans of 7,241 borrowers.  *Id.*

Accordingly, this Court should hold that the Commonwealth is precluded from pressing the claim that the defendants' response to the DTR Submission was arbitrary or capricious.

### Conclusion

For the reasons stated, and on the authorities cited, in this memorandum of law, this Court should dismiss this case under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).