UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS ) <br> ) <br> Plaintiff, ) <br> ) <br> v.  ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> EDUCATION and ELISABETH DEVOS, in ) <br> Her official capacity as Secretary of Education, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 19-12177-LTS <br><br> Plaintiff's Reply in Support of Summary Judgment <br><br> (Leave to File Granted on 5/8/2020) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT**
**LEAVE TO FILE GRANTED ON MAY 8, 2020**

Defendants do not, and cannot, defend the merits of their denial of the Massachusetts Attorney General's defense to repayment application ("DTR") on behalf of former Corinthian students. Instead, Defendants seek to relitigate issues already resolved by this Court in *Williams*[1] and deny their obligation under both the Administrative Procedure Act ("APA") and their own regulations to render a reasoned decision on the DTR. Defendants' unreasoned denial of the DTR is plainly arbitrary and capricious. Indeed, any determination short of an award of full relief would be arbitrary and capricious in light of the overwhelming evidence before the Department and the Department's own past practice.[2]

---

[1] Namely, in *Williams*, the Court unambiguously decided the following issues central to this case, which Defendants now seek to revisit without citing to any new facts or law: (1) the Attorney General was authorized to submit the DTR, and the DTR validly raised a borrower defense claim on behalf of all of the listed students; (2) the Department was obligated to render a reasoned decision on the merits of the DTR, and its January 8, 2016 letter did not constitute such a decision; (3) the borrower defense rule ("BD Rule") permits group claims; and (4) the Department's denial of relief under the DTR is subject to judicial review. 2018 WL 5281741 at *6, 11, 12, 14, 15. The Commonwealth incorporates by reference the *Vara* Plaintiffs' discussion of this issue. *See Vara et al. v. DeVos.*, No. 19-cv-12175, ECF 50 ("Vara Br.") at 1-3.

[2] Defendants incorrectly assert that the Department may deny full relief *in this case* based on the erroneous claim that, as a *general* proposition, the Secretary has discretion under the BD Rule to calculate relief without regard to state law. Def. Br. at 4. To resolve this case, the Court need not decide the broad question of whether the Department may *ever* divorce its determination of a borrower's relief award from state law under the BD Rule. Nonetheless, it bears noting that Defendants' interpretation of the BD Rule is both incorrect and illogical. Under Defendants' theory, the Secretary has unfettered discretion to determine that a borrower may receive *no* relief or nominal relief despite first determining that the borrower is entitled to relief under state law. For example, in this case, Defendants argue that determining each Covered Student's relief would require individualized determinations of reliance, *Id.*, though this Court has already held that proving entitlement to relief based on M.G.L. c. 93A *does not* require a demonstration of reliance, *Williams,* 2018 WL 5281741 at *13. To deny relief at the award stage for reasons that are inconsistent with state law would render meaningless the state law determination of entitlement to relief. To support their claim, Defendants cite only to a N.D. Cal. decision addressing plaintiff's standing on a motion to dismiss. Notably, that Court did not have the benefit of an administrative record or full briefing on this issue. *CA v. U.S. Dep't of Educ.*, 2018 WL 10345668, at *10 (N.D. Cal. Jun. 27, 2018). The Commonwealth incorporates by reference the *Vara* Plaintiffs' further discussion of this issue. Vara Br. at 3-5.

I. **Defendants Incorrectly Argue that the Department Need Not Provide a Reasoned Decision in Response to the DTR**

Defendants continue to claim that the BD Rule affords the Secretary unbounded discretion to decide whether or not to reach any decision whatsoever on a group borrower defense claim and whether or not to articulate a denial of such a claim. Def. Br. at 10, 12. Defendants now even assert—for the first time—that the Department is entitled to deference in its determination that it may deny borrower defense claims without providing reasoned decisions. Def. Br. at 12. But this position is at odds with the APA, and agencies are entitled to no deference in their interpretations of the APA's requirements. *See State v. U.S. Bur. of Land Mgt.*, 277 F. Supp. 3d 1106, 1117 (N.D. Cal. 2017) (affording no deference to agency's APA interpretation as "deference is warranted only when an agency is exercising authority delegated to it by Congress to *administer* a particular statute") (emphasis added).

Putting aside the issue of deference, Defendants contradict their own justification for their claim that they may withhold explanation for their denial of borrower defense claims, namely, that these decisions do not constitute adjudications. Indeed, throughout their briefing in this case, Defendants concede that such decisions *are* adjudications, Def. MTD Br. at 4, 5, 10, and Sec. DeVos testified before Congress that "BD claims on pre-2017 loans will be *adjudicated* using the applicable state standard." DeVos Test., House Ed. and Labor Committee (Dec. 12, 2019), https://edlabor.house.gov/imo/media/doc/SecretaryDeVosTestimony121219.pdf.

The Commonwealth incorporates by reference the *Vara* Plaintiffs' further discussion of this issue. Vara Br. at 3-5.

II. **Defendants' New Argument that Their Actions Are Not Subject to Judicial Review Fails**

The APA provides a "very narrow exception" to the strong presumption counseling in

favor of judicial review, *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007), and Defendants have failed to show that it applies here. Defendants now attempt to reframe the "seminal cases" that guide analysis of the relevant provision of the APA, 5 U.S.C.§ 701(a)(2), as actions challenging an "agency's judgment regarding how to use its resources," but the two cases they cite are inapplicable and do not establish such a rule. Def. Br. at 10*.* Rather, both cases turned on the fact that the agency at issue was acting under a broad and explicit grant of discretion when engaging in the challenged conduct. In *Cowels v. Fed. Bureau of Investigation*, the Court found that Congress *explicitly* provided the FBI with broad discretion in determining the standards for entering DNA samples into a national database, 327 F. Supp. 3d. 242, 249-50 (D. Mass. 2018) (finding that "the statute's language is plain and fairly exudes deference to the FBI"), and in *Isaacs v. Dept. of Educ.*, the relevant regulation *explicitly* reserved for the agency's discretion the decision of whether to waive its deadlines for filing a claim. 2018 WL 1257760, *5 (D. Mass. 2018) ("the Department *may*, for good cause shown, extend [its deadlines]") (emphasis added).

Here, the Higher Education Act ("HEA") provides no discretion to the Department to decline to apply its borrower defense regulations. Indeed, Congress *required* the creation of the regulations that Defendants now claim they are empowered to ignore. *See* 20 U.S.C. § 1087e(h) ("The Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a Title IV loan).[3] Nor does the BD Rule itself provide any latitude to the Department to withhold decisions on borrower defense claims. *See* 34 C.F.R. § 685.206(c) (eff. until Oct. 16, 2018). As such, Defendants lack discretion

---

[3] As discussed in the Commonwealth's primary brief, the BD Rule, which was promulgated pursuant to this Congressional mandate, establishes a clear legal standard, which readily constitutes "law to apply" for the purposes of 5 U.S.C. § 701(a)(2). *See* Comm. SJ Br. at 32-34.

to decline to act on claims submitted pursuant to these mandatory regulations.[4]

### III. Defendants' Only Challenge to the Commonwealth's Article III Standing Is Based on Causation, and the Department Plainly Caused the Harms at Issue

Defendants concede that they "have not argued [that the Commonwealth] fail[ed] to allege harm, that the harms were not specific or particularized, or that the harms cannot be redressed by the requested relief." Def. Br. at 6.[5] Instead, Defendants base their claim that the Commonwealth lacks Article III standing exclusively on the causation requirement. *Id*. at 7. Having previously based their argument on an incorrect causation standard, *see* Comm. SJ Br. at 22, Defendants now rely entirely on *Mass., et al v. Dep't of Educ.*, 1:17-cv-02679-TNM (D.D.C. 2018) (the "DDC Lawsuit"). Def. Br. at 6. However, Defendants' continued attempt to rely on the DDC Lawsuit to challenge the Commonwealth's standing is unavailing, as the harms to the proprietary interests at issue in this case are distinct from those raised by the plaintiffs and considered by the Court in DDC. *See infra* at 7.[6]

### IV. Defendants Fail to Address the Parens Patriae Interest Advanced by the Commonwealth

Defendants' argument opposing the Commonwealth's standing to bring suit as parens

---

[4] The Department incorrectly claims that the Commonwealth "does not seek a remand or a decision from Defendants." Def. Br. at 11. In addition to declaratory relief, the Commonwealth's Complaint asks the Court to "compel the Department to issue a non-arbitrary decision on the merits of the [DTR]." *See* Complaint, at Prayer to Relief B.

[5] Defendants further concede that they "did not make a zone-of-interests argument, as they would be hard-pressed to ever argue that someone challenging agency action would not be within the zone of interests of the APA," but then nonetheless suggest that the Commonwealth is seeking to evade the "zone of interests" test. Def. Br. at 7. There can be no question, as Defendants aptly stated, that the Commonwealth is within the zone of interests of the APA. *Id.* Furthermore, as the Commonwealth explained in its primary brief, the Commonwealth is also certainly within the "zone of interests" of the HEA, which specifically contemplates involvement by the States in the regulation of higher education. *See* 20 U.S.C. § 1099a; Comm. SJ. Br. at 18.

[6] Contrary to Defendants' assertion, Def. Br. at 7, the Commonwealth has argued at length that the Department's actions were the cause of the harm to the Commonwealth's proprietary interests. *See, e.g.*, Comm. SJ Br. at 18-23.

patriae is premised on two fundamental mischaracterizations of the Commonwealth's complaint: (1) that the Commonwealth is seeking to protect its residents from the operation of a federal debt collection statute, and (2) that the Commonwealth is seeking preferential treatment for its residents. Def. Br. at 8-9. To the contrary, the Commonwealth is seeking to ensure that the Department act *in accordance* with federal law, and that it do so *equitably* for all Massachusetts residents.

First, the Commonwealth is not seeking to interfere with the operation of any debt collection statutes, as Defendants claim, but rather to ensure that the Department appropriately applies the BD Rule. This regulation does not conflict with federal debt collection statutes, and the Commonwealth has neither challenged the Department's debt collection activities nor sought relief specifically related to these activities in this lawsuit. *See, e.g.*, Complaint at ¶¶ 70-79; Prayer for Relief A-E; Comm. SJ Br. at 28-29.

Second, Defendants' argument that the Commonwealth has brought this action seeking "preferential treatment" for Massachusetts residents is baseless. Def. Br. at 9. As the Commonwealth explained in its primary brief, Defendants' willingness to treat similarly-situated *Massachusetts* residents inequitably for the purpose of avoiding litigation—which Defendants have not denied—undercuts their argument that the Department shares the Commonwealth's interest in the well-being *and fair treatment* of Massachusetts residents. Comm. SJ Br. at 29-30.

### V. Defendants' Res Judicata Theory Is Unfounded

Defendants once again rely on mischaracterizations of the applicable legal standards and the DDC Lawsuit in arguing that res judicata bars the present lawsuit. Defendants contend that the original complaint filed in the DDC Lawsuit—which was amended and never considered by the Court—supports their argument that the Commonwealth's present claims *could have* been

brought in that litigation. Def. Br. at 16-17. However, the procedural history of the DDC Lawsuit contradicts this argument. In fact, after the Department filed a motion to dismiss in the DDC Lawsuit, the plaintiffs found it necessary to amend their complaint for the specific purpose of *removing* the very language on which the Defendants presently rely. *See* DDC Lawsuit, ECF 19, Motion to Dismiss; ECF 21, Amended Complaint. This procedural history confirms that the DDC Lawsuit was not the appropriate forum in which to adjudicate the Department's response to the DTR. As discussed in the Commonwealth's primary brief, the DDC Lawsuit was a multistate action that raised claims arising from an entirely separate nucleus of operative facts, and the DDC Court never adjudicated the merits of the claims at issue here. Comm. SJ Br. at 39-42.

Moreover, Defendants' res judicata argument necessarily fails because the DDC Lawsuit did not result in a judgment on the merits. The DDC Court dismissed the case on exclusively jurisdictional grounds, and it is well-settled in the First Circuit that such a decision *does not* constitute a decision on the merits for the purposes of res judicata. *See, e.g.*, *Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000) ("Dismissal for lack of subject matter jurisdiction is not considered to be 'on the merits,' and therefore is without res judicata effect."). Defendants' unsupported claim that the Court should look to inconsistent D.C. Circuit precedent is entirely baseless. Defendants have provided no reasonable explanation or authority for the proposition that the First Circuit's res judicata standards do not apply to the question in this case.

In their reply brief, Defendants cite language from *Muniz* pertaining to *issue* preclusion. Def. Br. at 17. However, Defendants did not argue issue preclusion in their motion to dismiss and have thus waived this argument. *See* Comm SJ Br. at 42. In any event, such an argument would be unavailing. For issue preclusion to apply to a Court's standing determination, the prior decision would necessarily need to be based on the same operative facts. *Global NAPs, Inc. v.*

*Verizon New England, Inc.*, 603 F.3d 71, 95 (1st Cir. 2010) ("Issue preclusion requires that [] both proceedings involved the *same* issue of law or fact.") (emphasis added); *see also Interface Partners Int'l, Ltd. v. Hananel*, No. CV 06-11708, 2006 WL 8437203, at *3 (D. Mass. Nov. 21, 2006) (holding that issue preclusion did not apply where "[t]he *forum non conveniens* issue presents different questions of law and fact in each case").

The proprietary standing argument considered by the DDC Court was materially different from the one at issue here. Since the Department's treatment of the DTR was not at issue in the DDC Lawsuit, neither were the bases for standing raised in this case. The DDC Court considered states' standing where the challenged Departmental conduct was improper debt collection—and explicitly did *not* consider the Department's failure to grant loan discharges. Comm. SJ Br. at 39-40. This distinction is critical, as neither the injury to the Commonwealth's proprietary interest at issue in this lawsuit nor the cause of that injury were before the Court in the DDC Lawsuit. Unlike the conduct at issue here, the conduct challenged in the DDC Lawsuit did not keep students in default or prevent borrowers from accessing essential financial aid by operation of federal law. *See* 20 U.S.C. § 1091(a)(3), (f). Here, sworn declarations provided to the Court make clear that former Corinthian students' inability to access additional student aid funds due to the Department's conduct prevents students from attending state schools. These declarations eliminate any possibility that the causal link in this case is speculative.

## CONCLUSION

For the reasons discussed herein and in the Commonwealth's primary brief, the Commonwealth respectfully requests that the Court grant its Motion for Summary Judgment and deny Defendants' Motion to Dismiss.

Respectfully submitted,

FOR THE COMMONWEALTH OF MASSACHUSETTS,

MAURA HEALEY
ATTORNEY GENERAL

By: */s/ Yael Shavit*
Yael Shavit
Miranda Cover
Diana Hooley
Assistant Attorneys General
Office of the Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2197 (Shavit)
(617) 963-2986 (Cover)
(617) 963-2198 (Hooley)
Yael.Shavit@mass.gov
Mercy.Cover@mass.gov
Diana.Hooley@mass.gov

Dated: May 13, 2020

### Certificate of Service

I hereby certify that a true copy of the above document was served upon counsel for all parties of record through the CM/ECF system on May 13, 2020.

*/s/ Yael Shavit*
Yael Shavit

Dated: May 13, 2020

8